2/22/2018 11:47 AM
Chris Daniel - District Clerk Harris County
Envelope No. 22698779
By: Nelson Cuero
Filed: 2/22/2018 11:47 AM

**2018-11608 / Court: 129**

NO: _____

| | |
|---|---|
| DRESSER-RAND GLOBAL SERVICES, INC. | |
| *Plaintiff* | IN THE DISTRICT COURT |
| VS. | HARRIS COUNTY, TEXAS |
| KUEHNE + NAGEL INC. | \_\_\_\_ JUDICIAL DISTRICT |
| *Defendant* | |

**PLAINTIFF'S ORIGINAL PETITION AND REQUEST FOR DISCLOSURE**

COMES NOW Plaintiff, Dresser-Rand Global Services, Inc. ("Dresser-Rand" or "Plaintiff"), complaining of Defendant Kuehne + Nagel Inc., ("K + N"), and would respectfully show as follows:

**I. DISCOVERY CONTROL PLAN**

1.1 Discovery is intended to be conducted under Level 2 pursuant to TEX. R. CIV. P. 190.3.

1.2 This suit does not fall under the expedited-actions process in Texas Rule of Civil Procedure 169 because Plaintiff seeks damages in excess of $100,000.

**II. PARTIES**

2.1 Dresser-Rand is a leading supplier of mission-critical, high speed rotating equipment solutions to the worldwide oil, gas, petrochemical, and process industries, with its principal place of business in Houston, Harris County, Texas.

2.2 K + N is a New York corporation with its principal place of business in New Jersey. K + N is qualified to do business in Texas, and operates as a logistics company in the State of Texas for the purpose of accumulating monetary profit, and has its principal office in Houston, Harris

1

County, Texas. K + N may be served with process through its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, TX 75201-3136.

2.3 Plaintiff specifically invokes the right to institute this suit against whatever entities were conducting business using an assumed or common name, if any, with regard to the events described in this Petition. Plaintiff specifically invokes the right under Rule 28, Texas Rules of Civil Procedure, to have the true name of such parties substituted at a later time, if necessary.

### III. JURISDICTION AND VENUE

3.1 The Court has jurisdiction over the Defendant because, at all times relevant hereto, Defendant was doing business in the State of Texas and had committed torts in Texas.

3.2 Venue is proper in Harris County, Texas pursuant to Section 15.002(a)(1) of the TEXAS CIVIL PRACTICE AND REMEDIES CODE because it is the county in which all or a substantial part of the events or omissions giving rise to the claim occurred. Venue is also proper in Harris County, Texas pursuant to Section 15.002(a)(3) of the TEXAS CIVIL PRACTICE AND REMEDIES CODE because it is the county of the Defendant's principal office in this state.

### IV. FACTS

4.1 On or about November 15, 2013, Dresser-Rand agreed with K + N to provide freight forwarding and logistics related services. In this agreement, Dresser-Rand was required to request in writing the nature and type of services to be provided, the fees and other compensation payable to K + N, and such other terms and provisions as the parties shall mutually agree. The agreement contained a survival provision which states that all provisions of this Agreement shall survive any termination or expiration to the fullest extent necessary so as to give the Parties the full benefit of the bargain expressed therein. The agreement also contained a provision regarding "Sole and

Exclusive Venue," where legal action, suit or proceeding must be brought solely and exclusively in either the United States District Court for the Southern District of Texas (Houston Division) or in the state courts of the State of Texas located in Harris County, Texas.

4.2 On or about March 3, 2015, Dresser-Rand informed K + N via email that Siemens was expected to purchase Dresser-Rand. A formal letter was sent on or about July 1, 2015, noting the completion of the acquisition, and continued supply of materials, services and invoices per the current process, until notified in writing of specific changes in shipping or invoicing instructions.

4.3 On April 8, 2016, Crane Worldwide Logistics (on behalf of Dresser-Rand) sent K + N an email indicating that they would be delivering three crates to the K + N facility in Laredo, Texas. The shipment arrived on drop deck trailer 55 around 6:10 PM. Two crates were smaller and the third crate, at issue here, was substantially larger than the other two, weighing more than 6 tons, and was thus nearly 10 times as heavy as the next heaviest crate in that shipment. The two smaller crates, (weighing 1,678 pounds and 666 pounds respectively), were offloaded via forklift without any issues.

4.4 Rather than request information on the third crate, K + N, through their employees or agents, proceeded to attempt lifting the third large crate, containing a centrifugal compressor barrel weighing over 12,500 pounds, with an inadequately sized forklift. When this proved unsuccessful, a second forklift was sent for support. The two forklifts lifted the crate from each side of the drop deck trailer and once it was lifted they asked the driver to pull out. When the load was being lowered, the right forklift went down faster than the left causing the load to shift. One of the forklifts was pushed back by the weight and the crate dropped three to four feet, landing on the

ground on its side. The crate that surrounded the compressor broke, except for the base of the pallet which was reinforced and held the compressor to it with three metal straps.

4.5 The two forklift operators were instructed by their supervisor to remove all the broken wood and to push the pallet back onto the upright position. In the process of straightening the pallet, the forklift forks scraped the compressor and tore the plastic that surrounded it. A larger forklift was then subcontracted by K + N to move the compressor onto the open dock. Had K + N used this larger forklift for the original lift, instead of improperly attempting to use two smaller forklifts, the crate would not have been dropped.

4.6 On or around April 12, 2016, an incident report detailing this event and its cause was sent to K + N. Also on or around this day, the damaged compressor was shipped to Dresser-Rand's Houston Service Center for repairs.

4.7 Following this loss and damage to Dresser-Rand's equipment, all K + N warehouse employees were instructed to not offload any shipment over 8,000 pounds with K + N forklifts and that all loads over that size should be offloaded by a 30,000 pound forklift, with prior customer approval. K + N also gave instructions that no shipment will be offloaded without paperwork detailing shipment weight and/or any special loading or offloading instructions, as well as other instructions.

4.8 On or about April 20, 2016, Dresser-Rand completed their finalized inspection report and on or about April 29, 2016, Dresser-Rand sent a letter to K + N to inform them that repairs had been completed to the centrifugal compressor barrel, for Dresser-Rand's customer at Dresser-Rand's service center in Houston, Texas, at a cost of over $325,000, and requested reimbursement of repair and shipping costs to the customer in Tabasco, Mexico. No payment has been made.

## V. CAUSES OF ACTION

**A.** **Negligence**

5.1 Dresser-Rand re-alleges paragraphs 1.1 to 4.8 as though fully again set forth.

5.2 K + N undertook duties to Dresser-Rand to provide, in a safe and workmanlike fashion, various transportation services, including ensuring proper loading, unloading and inside storage. K + N failed to reasonably provide these services and breached its duties to Dresser-Rand by failing to transport, load, unload or move the compressor barrel in a safe manner.

5.3 The damages sustained by Dresser-Rand were caused by the negligence of K+ N, its officers, agents, or employees, in the following particulars, among others:

(a) failing to transport the crate containing the compressor in a reasonable manner;

(b) failing to provide proper equipment for the transfer of the crate containing the compressor;

(c) failing to properly select, hire, train and manage its personnel used for the handling of the compressor;

(d) failing to implement proper and adequate handling methods and/or procedures;

(e) failing to take reasonable and adequate precautions to prevent damage to the compressor; and

(g) other acts of negligence and/or omissions to be shown at trial herein.

**B.** **Breach of Bailment Contract**

5.4 Dresser-Rand re-alleges paragraphs 1.1 to 4.8 as though fully again set forth.

5.5 K + N was responsible for the handling and safe transport of the compressor while in their care, custody, and control. As bailee of the compressor, K + N owed Dresser-Rand a duty of care, ordinary or otherwise. K + N's acts and omissions in handling and mishandling the lifting

5

and movement of the compressor, breached that duty. K + N caused, contributed, or permitted the compressor to be damaged while it was in their care, custody, and control. These acts and omissions constituted material breaches of the bailment contract.

### C. Breach of Contract

5.6  Dresser-Rand re-alleges paragraphs 1.1 to 4.8 as though fully again set forth.

5.7  On November 15, 2013, Dresser-Rand entered into a binding agreement with K + N to handle logistics. After Siemens' purchased Dresser-Rand, this General Framework Agreement on Transport and Logistical Services continued to control the relationship, and the handling of the damaged compressor.

5.8  K + N breached this contract by damaging the compressor and returning it in damaged condition to Dresser-Rand, and by failing to properly train, supervise and instruct K + N employees on the proper handling and lifting of cargo, including the crate containing the compressor.

## VI. DAMAGES

6.1  Plaintiff incorporates by reference the factual allegations contained in the preceding paragraphs.

6.2  As a result of K + N's negligence, breach of bailment contract, and breach of contract as described above, Dresser-Rand has suffered actual damages for damage and repair to its goods, and out-of-pocket expenses in excess of $275,000.

## VII. RULE 47 STATEMENT

7.1  While the amount of the Plaintiff's damages are within the sole province of the jury, Plaintiff is required to plead a minimum amount of damages. In accordance with TEX. R. CIV. P. 47, Plaintiff is seeking damages in excess of $200,000 but not more than $1,000,000.

## VIII. REQUEST FOR DISCLOSURE

8.1     Pursuant to Rule 194 of the Texas Rules of Civil Procedure, Plaintiff requests the Defendant disclose, within fifty (50) days of service of this request, the information and material described in Rule 194.2 of the Texas Rules of Civil Procedure.



[*continued next page*]

WHEREFORE, Dresser-Rand Global Services, Inc., prays for judgment against Kuehne + Nagel Inc. for actual damages in an amount exceeding the jurisdictional limits of this Court; prejudgment and post-judgment interest; attorney's fees; costs of suit; and all other relief to which it may show itself justly entitled, in law or in equity.

Respectfully submitted,

SPAGNOLETTI & CO.

/s/ David S. Toy
David S. Toy
Texas SBN 24048029
dtoy@spaglaw.com
Eric J. Rhine
Texas SBN 24060485
erhine@spaglaw.com
SPAGNOLETTI & CO.
401 Louisiana, 8th Floor
Houston, TX 77002
Telephone: 713 653 5600
Facsimile: 713 653 5656

and

NICOLETTI HORNIG & SWEENEY
James F. Sweeney
NY Bar No. 1668078
jsweeney@nicolettihorning.com
Carole Rouffet
NY Bar No. 5406848
crouffet@nicolettihorning.com
Wall Street Plaza
88 Pine Street
New York, NY 10005
Telephone: 212 220 3830
Facsimile: 212 220 3780

**ATTORNEYS FOR PLAINTIFF**